# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, <br><br> Defendant. | Case No. 4:18-cv-00468-ALM <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION TO STAY

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ...................................................................................................................3

  A. ADM Software and the Seattle Transaction............................................................3

  B. Wapp Litigation........................................................................................................4

  C. The Manufacturer Cases...........................................................................................5

  D. The Wells Fargo and Bank of America Cases .........................................................6

III. LEGAL STANDARDS .........................................................................................................8

IV. ARGUMENT.......................................................................................................................10

  A. Factor (1): A Stay Will Not Unduly Prejudice Wapp. ...........................................10

  B. Factor (2): A Stay Would Simplify the Issues in This Case. .................................12

  C. Factor (3): Stage of the Litigation ..........................................................................13

V. CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Mktg. Sys., LLC v. CVS Pharmacy, Inc.*,
  No. 6:15-CV-134-JRG-KNM, 2016 WL 3277258 (E.D. Tex. June 14, 2016) ........................11

*Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co., Ltd.*,
  No. 6:14-cv-759, 2015 WL 11143485 (E.D. Tex. Dec. 16, 2015) ..........................................11

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)...................................................................................................................8

*Crossroads Systems, Inc. v. Dot Hill Systems Corp.*,
  No. 13-CA-1025, 2015 WL 3773014 (W.D. Tex. June 16, 2015) ..........................................11

*CyWee Grp. Ltd. v. Huawei Device Co.*,
  No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018)..............2, 8, 9, 10, 13

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006)..................................................................................................11

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ...............................................................................1, 2, 8, 9

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989).................................................................................................10

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)...................................................................................................9

*Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*,
  342 U.S. 180 (1952)...................................................................................................................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)...................................................................................................................8

*NFC Tech. LLC v. HTC Am., Inc.*,
  No. 2:13-CV-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ..........................................8

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014).........................................................................................1, 2, 10

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005).......................................................................................8

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011).................................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Uniloc USA, Inc. v. Corbis Corp.*,
  No. 6:13-CV-942-RWS-KNM, 2015 WL 11199063 (E.D. Tex. July 6, 2015) ........................ 10

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
  No. 2:13-CV-909, 2015 WL 123593 (E.D. Tex. Jan. 6, 2015) ................................................ 10

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) ......................................................................................... 9, 10

I.      INTRODUCTION

Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively, "Wapp") have filed four overlapping, and substantially identical, suits in this Court.  On July 2, 2018, Wapp filed a complaint against Micro Focus International plc, claiming infringement of three patents by software products and functionalities allegedly manufactured and sold by Micro Focus International plc.  Also on July 2, Wapp filed the present case against Hewlett Packard Enterprise Company ("HPE"), the former owner of the business that makes and sells the accused software, claiming infringement of the same three patents by the same software.  Later, on July 16 and then July 20, Wapp filed virtually identical complaints against Wells Fargo & Company and Bank of America Corporation, alleged customers of the accused software.  All four suits involve the same controversy—Wapp alleges direct infringement of the same patents, by the same products and functionalities, based on the same theory.  In fact, Wapp attaches identical claim charts directed only to products allegedly supplied by Micro Focus International plc to all four of its complaints.  Because of this substantial overlap, Wapp can identify no need to proceed with all of the actions, because one action—the action against the manufacturer[1] of the accused software—takes precedence.  *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (non-precedential).

That HPE formerly owned the business responsible for the accused software makes no difference.  As part of the transaction that transferred ownership of the business, Seattle SpinCo,

---

[1] As explained below, Micro Focus International plc has moved to dismiss Wapp's case against it.  Micro Focus International plc asserts that it is a holding company that has no contacts with the State of Texas, nor is it involved in the design and sale of the accused software.  Indirect subsidiaries of Micro Focus International plc—Seattle SpinCo, Inc. and EntIT Software LLC—who are responsible for the accused software have filed a declaratory judgment action in Delaware that seeks declarations of non-infringement, invalidity, and subject matter ineligibility of the asserted patents.

Inc. ("Seattle SpinCo"), the company that acquired the business, assumed responsibility for all liability—past, present, and future—associated with allegations of patent infringement directed at the software accused in this case. And Seattle SpinCo acknowledges that responsibility in support of this motion. HPE, thus, has no role in this case.

Moreover, each of the factors that this Court considers in determining whether to stay a case supports staying Wapp's case against HPE in favor of Wapp's claims focused on the manufacturer. Indeed, in cases similar to this, for example in cases involving customers, "to facilitate just, convenient, efficient, and less expensive determination[s]," "courts have developed a practice of" "staying claims against [the non-manufacturer] pending resolution of the suit against the manufacturer" where the actions involve at least the same "major" issues, such as infringement and invalidity. *In re Nintendo*, 756 F.3d at 1365; *In re Google*, 588 F. App'x at 990; *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *3–5 (E.D. Tex. Aug. 22, 2018) (Bryson, C.J.). The touchstone for these cases, which applies with full force here, is whether substantial savings of litigation resources can be expected. Here, the overlap with the manufacturer suit together with HPE's agreement to be bound by the infringement and invalidity findings of the manufacturer suit, should the Court stay this case, means that infringement and invalidity will need to be litigated at most once. And HPE's divesture of all aspects of the business—including the assets, know-how, personnel and liability associated with the relevant business—eliminates any legitimate interest Wapp has in proceeding with this suit in parallel with the manufacturer suit.

Respectfully, therefore, the Court should stay this suit (and the Bank of America and Wells Fargo suits)[2] while Wapp litigates its claims against either Micro Focus International plc (in the

---

[2] Wells Fargo and Bank of America have filed motions to stay in their respective cases. *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, No. 4:18-cv-00501-ALM-KPJ, Dkt. No. 11 (E.D. Tex.

suit in this Court involving the entity that Wapp alleges is the manufacturer) or Seattle SpinCo and EntIT Software LLC (in the suit in Delaware involving the entities that claim to be the true manufacturers). Regardless of which of those two suits ultimately goes forward, at least one manufacturer suit involving the same allegations as in this suit against HPE will survive, and that suit will be dispositive of at least any infringement and invalidity issues in this case.

## II. BACKGROUND

### A. ADM Software and the Seattle Transaction

Prior to September 1, 2017, HPE had a software business that included software products and functionalities generally relating to computer hardware or software performance testing. Some of these software products and functionalities were in a grouping that HPE called "Application Testing and Delivery Management" ("ADM"), which included, among other things, LoadRunner, Performance Center, StormRunner Load, Mobile Center, and Network Virtualization (the "Accused Software"). Ex. 1 (Letelier Decl.), ¶ 3.

On September 7, 2016, HPE entered into a series of agreements on the terms of a transaction, called the "Seattle Transaction," as a result of which the ADM software would no longer be part of HPE. Ex. 2 (Evans Decl.), ¶ 5. In particular, under the Seattle Transaction, HPE transferred its ADM software business, including the Accused Software, to its then-subsidiary, Seattle SpinCo (and/or one or more of Seattle SpinCo's subsidiaries). Ex. 1 (Letelier Decl.), ¶¶ 4–6; Ex. 2 (Evans Decl.), ¶¶ 7–9. Seattle SpinCo then separated from HPE. Ex. 1 (Letelier Decl.), ¶ 4; Ex. 2 (Evans Decl.), ¶ 8.

Thus, since the completion of the Seattle Transaction, Seattle SpinCo (and/or one or more

---

Oct. 17, 2018); *Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, No. 4:18-cv-00519-ALM, Dkt. No. 12 (E.D. Tex. Oct. 17, 2018).

3

of its subsidiaries) has assumed all responsibilities for making, using, importing, selling or offering to sell the ADM software, and HPE has not had any role in such activities. Ex. 1 (Letelier Decl.), ¶ 6; Ex. 2 (Evans Decl.), ¶ 13. Moreover, as a result of the Seattle Transaction, HPE divested itself of any liability arising from past, present, and future patent infringement with respect to the ADM software business's making, selling, offering to sell, and/or importing of the ADM software, as any such liability was transferred to Seattle SpinCo. Ex. 1 (Letelier Decl.), ¶¶ 7–13; Ex. 2 (Evans Decl.), ¶¶ 10–13. And, since the Seattle Transaction, to the extent HPE has used the Accused Software, such use has been "off-the-shelf," with no input into the design, development or maintenance of the software, nor with any ability to modify the software. Ex. 1 (Letelier Decl.), ¶ 6.

### B. Wapp Litigation

On July 2, 2018, Wapp filed the Complaint in this case, alleging direct infringement by HPE of U.S. Patent Nos. 9,971,678 ("the '678 patent"), 9,298,864 ("the '864 patent"), and 8,924,192 ("the '192 patent") (collectively, the "Patents-in-Suit") in connection with the Accused Software. Compl. ¶¶ 71, 89, 109. According to Wapp, the '678 and '192 patents describe systems that "address technical problems related to simulating network systems to determine performance of the mobile device" and the '864 patent describes systems that "enable the performance engineer to interact with the virtual users by providing scripts to record and replay user interactions on the mobile device to emulate real world networks during load tests." *Id.* ¶¶ 72, 92, 110. The Complaint attaches claim charts purporting to support Wapp's allegations of infringement for certain claims of the Patents-in-Suit. *See id.*, Exs. 4–6.

Wapp acknowledges that the Seattle Transaction took place, as its Complaint references the Seattle Transaction as a "spin-out merger" by HPE. *See, e.g.*, *id.* ¶¶ 17–18; 43. Specifically, the Complaint alleges that "HPE completed a spin-out merger of its software group with Micro Focus on September 1, 2017." *Id.* ¶ 17. Wapp also alleges that the "functionality of [the] relevant

software products remained consistent following the spin-out merger." *Id.* ¶ 18.

Wapp's Complaint does not seek injunctive relief. *See id.* at 34–35, ¶¶ A–F. In addition, the Complaint limits Wapp's request for damages from HPE to "past damages." *Id.* at 34–35, ¶ D.[3]

HPE filed an answer to the Complaint on October 17, 2018. Dkt. 11 (the "Answer"). In the Answer, HPE denied Wapp's allegations of infringement of the Patents-in-Suit. *See, e.g.*, *id.* ¶¶ 71, 89, 109. HPE also asserted various affirmative defenses, including that the asserted claims of the Patents-in-Suit are invalid and are directed to patent-ineligible subject matter. *Id.* ¶¶ 125–133.

### C. The Manufacturer Cases

Wapp filed a complaint in this Court against defendant Micro Focus International plc the same day that it filed the Complaint in this case. In that complaint, Wapp alleges that Micro Focus International plc has directly infringed the same patents (*i.e.*, the Patents-in-Suit here) by making, using, offering to sell, and/or selling the same Accused Software. *Wapp Tech Ltd. P'ship v. Micro Focus Int'l Plc*, No. 4:18-cv-00469-ALM (E.D. Tex. July 2, 2018), Dkt. No. 1 (the "MF plc Complaint"), ¶¶ 22–29, 59, 76, 95. Wapp attached to the MF plc Complaint several claim charts purporting to support the alleged infringement by Micro Focus International plc; those claim charts are identical to the aforementioned claim charts attached to the Complaint against HPE. *Compare id.*, Exs. 4–6 *to* Dkt. 1, Exs. 4–6.

The MF plc Complaint also references the Seattle Transaction. Specifically, Wapp alleges in the MF plc Complaint that "Micro Focus [International plc] acquired a division of [HPE] in

---

[3] The "RELIEF REQUESTED" Section of Wapp's Complaint has two paragraphs labelled "D"; HPE is referring to the second such paragraph here.

September 2017 that includes various software products, including LoadRunner." MF plc Complaint, ¶ 7. The MF plc Complaint refers to this transaction as the "spin-out merger" from HPE. *Id.* ¶¶ 18, 20–21. The MF plc Complaint also acknowledges the transfer of the ADM products and functionalities out of HPE; namely, the MF plc Complaint alleges that "HPE LoadRunner became Micro Focus LoadRunner, HPE Performance Center became Micro Focus Performance Center, etc." *Id.* ¶ 18. The MF plc Complaint further alleges that a "Separation and Distribution Agreement . . . dated September 7, 2016 govern[s] the spin-out merger." *Id.* ¶ 20. Contrary to Wapp's allegation, the Separation and Distribution Agreement was not between HPE and Micro Focus International plc; rather, HPE and Seattle SpinCo executed that agreement.

On October 17, 2018, Micro Focus International plc filed a motion to dismiss Wapp's complaint against it on various grounds, including that Micro Focus International plc does not make the Accused Software and is not subject to personal jurisdiction in Texas. *Id.*, Dkt. No. 12. That motion to dismiss remains pending.

Meanwhile, on October 15, 2018, Seattle SpinCo and EntIT Software LLC ("EntIT Software"), which claims to be a subsidiary of Seattle SpinCo, jointly filed a declaratory judgment action against Wapp in the District of Delaware (the "Delaware Action"). *See Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-01585-UNA, Dkt. No. 1 (D. Del. Oct. 15, 2018). In that action, Seattle SpinCo and EntIT Software allege that they make and sell the Accused Software, and they seek a declaratory judgment of non-infringement, invalidity, and subject-matter ineligibility with respect to the same Patents-in-Suit asserted here against HPE. *See, e.g., id.* ¶ 1. Thus, there are currently two pending suits involving the manufacturer or alleged manufacturer of the Accused Software—one in this Court and another in Delaware.

      D.     **The Wells Fargo and Bank of America Cases**

On July 16 and 20, 2018, Wapp filed complaints against Wells Fargo & Company and

Bank of America Corporation, respectively. *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, No. 4:18-cv-00501-ALM-KPJ, Dkt. No. 1 (E.D. Tex. July 16, 2018) (the "Wells Fargo Complaint"); *Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, No. 4:18-cv-00519-ALM, Dkt. No. 1 (E.D. Tex. filed July 20, 2018) (the "Bank of America Complaint"). In each of these cases, Wapp alleges that the respective defendant "has been making and/or using (including for testing purposes) and continues to make and/or use (including for testing purposes) . . . including and not limited to the Micro Focus Software Suite and LoadRunner." Wells Fargo Complaint ¶ 26; Bank of America Complaint ¶ 26. As with Wapp's allegations against HPE, Wapp alleges only direct infringement of the Patents-in-Suit against Wells Fargo and Bank of America. Wells Fargo Complaint ¶¶ 58, 76, 96; Bank of America Complaint ¶¶ 58, 76, 96. The substance of Wapp's allegations of infringement against Wells Fargo and Bank of America is identical to that against Micro Focus International plc and HPE. In particular, Wapp attaches the same claim charts to its complaints against Wells Fargo and Bank of America as it did to its complaints against Micro Focus International plc and HPE. *Compare* MF plc Complaint, Exs. 4–6 *to* Wells Fargo Complaint, Exs. 4–6 *and* Bank of America Complaint, Exs. 4–6.

Wells Fargo and Bank of America filed answers to Wapp's respective complaints against them on October 16, 2018. *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, No. 4:18-cv-00501-ALM-KPJ, Dkt. No. 8 (E.D. Tex. Oct. 16, 2018); *Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, No. 4:18-cv-00519-ALM, Dkt. No. 9 (E.D. Tex. Oct. 16, 2018). In their answers, Wells Fargo and Bank of America deny Wapp's allegations of infringement of the Patents-in-Suit. Wells Fargo and Bank of America also assert several affirmative defenses, including that the asserted claims of the Patents-in-Suit are invalid and cover patent-ineligible subject matter. No. 4:18-cv-00501-ALM, Dkt. No. 8 ¶¶ 112–20; No. 4:18-cv-00519-ALM, Dkt. No. 9 ¶¶ 112–20.

7

### III. LEGAL STANDARDS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). As the Federal Circuit has explained, "[t]he Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *In re Google*, 588 F. App'x at 990 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). In determining whether to stay one case in view of another, courts should apply a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." 588 F. App'x at 991.

In assessing whether to stay one case in view of another, a court may consider the following three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *CyWee*, 2018 WL 4002776, at *3 (quoting *Soverain Software LLC v. Amazon.com*, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)).

With respect to the first factor, while patentees have an "interest in the prompt enforcement of its patent rights," that "interest in timely enforcement is 'present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.'" 2018 WL 4002776, at *3 (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015)). Rather, "whether the patentee will be unduly prejudiced by a stay . . . , like the irreparable harm-type inquiry, focuses on the patentee's need for

8

an expeditious resolution of its claim." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). "A stay will not diminish the monetary damages to which VA will be entitled if it succeeds in its infringement suit—it only delays realization of those damages . . . ." *Id.*

With respect to the second factor, courts have consistently emphasized the importance of simplification of issues (and the attendant savings in resources) in determining whether to stay a case. For example, under the customer suit doctrine, a "primary question" is "whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). As such, both the Federal Circuit and courts in this District have applied the customer suit doctrine in cases not involving a mere "re-seller," as long as the accused functionality in the customer's product is identical (or nearly identical) to the functionality made by the manufacturer—thereby ensuring overlap between the manufacturer and customer suits. For example, in *In re Google*, the Federal Circuit specifically rejected the argument that the customer suit doctrine should not apply merely because the defendants were not mere "resellers." 588 F. App'x at 990. Instead, the court applied the customer suit doctrine because the plaintiffs' infringement contentions to all of the defendants were "nearly identical," relying "almost exclusively on the underlying functionalities" provided by the same software provider (Google). *Id*. Applying *In re Google*, the court in *CyWee* similarly held that although the defendant was not a reseller *per se*, the customer suit doctrine should nevertheless apply to a case in which "a device manufacturer installs software central to an infringement inquiry made by a third party." *CyWee*, 2018 WL 4002776, at *6.

Additionally, in customer suits the courts consider whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and whether

9

the manufacturer is the only source of the infringing product. *Id.* (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The Federal Circuit has explained that this doctrine "is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement . . . and to guard against possibility of abuse," and is intended "to facilitate just, convenient, efficient, and less expensive determination[s]." *See In re Nintendo*, 756 F.3d at 1365; *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).

### IV. ARGUMENT

Whether considered in the context of the customer suit doctrine or outside of that doctrine, this case against HPE should be stayed pending a final resolution of the action involving the manufacturer of the software products at issue. A stay would cause no undue prejudice to Wapp; it would resolve major issues such as infringement and invalidity; this case is in its infancy; the manufacturer is the only source of the alleged infringing software; and HPE has agreed to be bound by the results of the manufacturer suit should this case be stayed. Thus, viewed from all angles, each factor favors staying this case.

#### A. Factor (1): A Stay Will Not Unduly Prejudice Wapp.

Apart from Wapp's generic interest in prompt enforcement, which will occur in any event through the manufacturer suit, Wapp cannot establish any "need" for expeditious resolution of its claims in this case. *See VirtualAgility*, 759 F.3d at 1318. First, Wapp has not alleged, nor can it, that it competes in any respect with HPE. As explained above in Section II.A, *supra*, HPE no longer makes, uses, or sells the Accused Software. And the Complaint does not even allege that Wapp produces any products at all. Thus, Wapp has no "risk [of] losing market share" as a result of HPE's alleged infringement. *Uniloc USA, Inc. v. Corbis Corp.*, No. 6:13-CV-942-RWS-KNM,

10

2015 WL 11199063, at *4 (E.D. Tex. July 6, 2015). Indeed, Wapp does not even request an injunction in this case. *See* Compl., pp. 34–35, ¶¶ A–F. Monetary damages are therefore sufficient to compensate Wapp for any alleged infringement, and a "mere delay in collecting those damages does not constitute undue prejudice." *See Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co., Ltd.*, No. 6:14-cv-759, 2015 WL 11143485, at *2 (E.D. Tex. Dec. 16, 2015) (quoting *Crossroads Systems, Inc. v. Dot Hill Systems Corp.*, No. 13-CA-1025, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015)). For this reason alone, "a stay will not cause any undu[e] prejudice." *See Advanced Mktg. Sys., LLC v. CVS Pharmacy, Inc.*, No. 6:15-CV-134-JRG-KNM, 2016 WL 3277258, at *2 (E.D. Tex. June 14, 2016).

Second, the monetary relief that Wapp seeks is available in the manufacturer action. As explained in Section II.A, *supra*, while HPE used to make and sell the ADM software (including the Accused Software) prior to the Seattle Transaction, HPE no longer does so; those activities have been transferred to Seattle SpinCo (and/or its subsidiaries), which are the only source of the Accused Software. And Seattle SpinCo is no longer a corporate affiliate of HPE—they are unrelated, distinct entities. Further, Seattle SpinCo assumed from HPE any past, present, and future liability for patent infringement by the Accused Software—including liability based on HPE's sales prior to the Seattle Transaction. And, in support of this motion, Seattle SpinCo has acknowledged the assumption of that liability. Ex. 2 (Evans Decl.), ¶¶ 10–13.

Even with this case stayed, one of the cases against the manufacturer or alleged manufacturer of the accused software—whether in Delaware or in this Court—will go forward. A "party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product." *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006). Any

11

damages award against the manufacturer would therefore preclude recovery against HPE. Thus, staying this case would not cause Wapp any delay in collecting money damages, as those damages are available from the manufacturer.

Third, as explained in Section II.A above, HPE divested itself of the entirety of its ADM software business—including the assets, employees, know-how, and liability. Thus, any information about how the products previously operated will be obtained through the manufacturer suit, not from HPE. And, again, Wapp's past damages claims would also be resolved by the manufacturer suit either via exhaustion of Wapp's patent rights (in the event of a settlement) or a damages award at trial (because if Wapp recovers from the manufacturers, it cannot recover from HPE).

As a result, there is no basis for Wapp to have this case against HPE go forward at the same time as a case against the manufacturer of the Accused Software.

### B. Factor (2): A Stay Would Simplify the Issues in This Case.

The controversy in this case substantially overlaps with that of the manufacturer suit—the patents and the products at issue are identical. *See* Sections II.B and II.C. Indeed, in its Complaint, Wapp asserts that the "functionality of [the] relevant software products remained consistent following the spin-out merger," and thus "where Micro Focus [International plc] documentation is cited, it is to be understood that, on information and belief, the referenced functionality existed in the corresponding HPE software products." Compl. ¶ 18. Additionally, as noted, Wapp attached *identical* infringement charts to its complaints against HPE and Micro Focus International plc. *Compare* Compl., Exs. 4–6, *with* No. 4:18-cv-00469-ALM, Dkt. No. 1, Exs. 4–6. Nor has Wapp raised any separate claims unique to either HPE or the alleged manufacturer, Micro Focus International plc (*e.g.*, claims of indirect infringement). *See* Compl. ¶¶ 58, 76, 96; No. 4:18-cv-00469-ALM, Dkt. No. 1 ¶¶ 59, 76, 95. And, as explained, to the extent HPE uses the Accused Software, that use is "off-the-shelf" and without input into the design or development thereby evidencing the

12

substantial overlap between Wapp's claims in this case against HPE and Wapp's claims against the manufacturer of the Accused Software. Ex. 1 (Letelier Decl.), ¶ 6.

Moreover, in the event of a stay, HPE has agreed to be bound by infringement and invalidity findings in the manufacturer action. Thus, once the manufacturer action is resolved, "there presumably will be nothing left for this Court to adjudicate" with respect to infringement and invalidity. *See CyWee*, 2018 WL 4002776, at *4. For that reason alone, "[t]his factor thus weighs heavily in [HPE's] favor." *See id.*

### C. Factor (3): Stage of the Litigation

This case is in its infancy—HPE has concurrently filed its answer. Discovery has not yet begun, and the Court has yet to hold a scheduling conference or enter a scheduling order. Accordingly, the early stage of the litigation weighs in favor of a stay.

### V. CONCLUSION

For the forgoing reasons, HPE respectfully requests that the Court grant this motion and stay this case pending final resolution of the manufacturer litigation involving Seattle SpinCo and EntIT Software, or MF plc, whichever of those two suits ultimately goes forward.

Dated: October 17, 2018

Respectfully submitted,

By: */s/ Mark N. Reiter*
Mark N. Reiter
Lead Counsel
State Bar No. 16759900
mreiter@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6912
Telephone: 214.698.3360
Facsimile: 214.571.2907

Neema Jalali
California State Bar No. 245424
njalali@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel: 415.393-8224
Fax: 415. 374-8436

*Attorneys for Hewlett Packard Enterprise Company*

14

## CERTIFICATE OF CONFERENCE

Counsel for the parties conferred by telephone on October 15, 2018.  I attended on behalf of HPE, and Jeffrey Toler attended on behalf of Wapp.  Counsel discussed the issues related to this motion, and Mr. Reiter referred Mr. Toler to the case law supporting that the instant action should be stayed in view of the manufacturer cases.  Despite that case law, Mr. Toler disagreed that this action should be stayed.  These discussions have ended in an impasse, which leaves the stay issue open for the Court to resolve.

*/s/  Mark N. Reiter*
Mark N. Reiter

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Mark N. Reiter*
Mark N. Reiter