# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE CO., <br><br> Defendant. | Case No. 4:18-cv-00468-ALM <br><br> **JURY TRIAL DEMANDED** |

**DECLARATION OF EILEEN EVANS**

I, Eileen Evans, hereby declare as follows:

1. The facts set forth herein are true and correct, and are based on my own personal knowledge. If called upon to testify as a witness, I could and would competently testify thereto.

2. I am Vice President and Deputy General Counsel at EntIT Software LLC ("EntIT Software"). As Vice President and Deputy General Counsel at EntIT Software, my role includes overseeing aspects of the company's legal department.

3. EntIT Software is a wholly owned subsidiary of Seattle SpinCo, Inc. ("Seattle SpinCo"). I serve and have served as Corporate Secretary and Board Secretary for Seattle SpinCo.

4. Prior to working for EntIT Software, I was employed by Hewlett Packard Enterprise Company ("HPE") as Deputy General Counsel for HPE's software and cloud businesses.

5. On September 7, 2016, HPE and other entities entered into a series of agreements on the terms of a transaction called the "Seattle Transaction," which involved the "spin-out" of a portion of HPE's business into a separate corporate entity, Seattle SpinCo. In my role at HPE prior to the Seattle Transaction, and in preparation for the Seattle Transaction, I helped to set up the legal department of the HPE business that was to be spun-out to Seattle SpinCo.

6. The Seattle Transaction was governed by various agreements, including a "Separation and Distribution Agreement" ("SDA") between HPE and Seattle SpinCo. *See* Ex. A (8-K Form of HPE dated Sept. 7, 2016) at 2.

### Transfer of Assets to Seattle SpinCo

7. As part of the Seattle Transaction, HPE—which was codenamed "Houston" in the SDA—transferred to Seattle SpinCo (and/or to Seattle SpinCo's subsidiaries) HPE's business that was referred to in the SDA as the "Seattle Business." *See* Ex. B (Exh. 2.2 (SDA) to 8-K Form of

HPE dated Sept. 7, 2016) at 1.  The SDA defined the "Seattle Business" as follows:

> "Seattle Business" means the software business of Houston, which as of the date hereof is conducted by the **"Software" reporting segment of Houston**, as such software business has been conducted and will be conducted in accordance with the Merger Agreement prior to the Distribution Time.

*Id.* at 8 (emphasis added).[1]

8. Upon completion of the Seattle Transaction, Seattle SpinCo separated from HPE, such that Seattle SpinCo was no longer a subsidiary of HPE and therefore no longer had any corporate affiliation (*i.e.*, common ownership) with HPE.  *See* Ex. B (Exh. 2.2 (SDA) to 8-K Form of HPE dated Sept. 7, 2016) at 1.

### The Application Testing and Delivery Management Software

9. The Seattle Business contained a business unit that was formerly known as Hewlett Packard Software LLC, which in connection with the Seattle Transaction was renamed to EntIT Software, a wholly owned subsidiary of Seattle SpinCo as noted above.  This business unit had responsibility for, among other things, a group of software products and functionalities called "Application Testing and Delivery Management" ("ADM").  *See* Ex. C (Exh. 99.1 (Transaction Press Release of HPE) to 8-K Form of HPE dated Sept. 7, 2016) at 86.  The products and functionalities in ADM included LoadRunner, Performance Center, StormRunner Load, Mobile Center, and Network Virtualization, which I understand the plaintiffs in this case accuse of infringement.

### Transfer of Liabilities to Seattle SpinCo

10. The SDA "provide[d] for . . . the assumption of certain liabilities by Seattle [SpinCo] from Hewlett Packard Enterprise."  *See* Ex. A (8-K Form of HPE dated Sept. 7, 2016) at

---

[1] The "Merger Agreement" refers to the "Agreement and Plan of Merger" dated September 7, 2016, by and among HPE, Seattle SpinCo, and other entities.

2. In particular, the SDA defined the "Seattle Liabilities" as including "Liabilities to the extent relating to, arising out of or resulting from" the "operation of the Seattle Business":

> (A) **the operation of the Seattle Business, as conducted at any time before** (by Houston or any of its Affiliates, any member of the Seattle Group or any of their respective predecessors), **at or after the Distribution Time** (including (1) any Liability relating to, arising out of or resulting from any act or failure to act by any Person, whether or not such act or failure to act is or was within such Person's authority, with respect to the Seattle Business . . . .

Ex. B (Exh. 2.2 (SDA) to 8-K Form of HPE dated Sept. 7, 2016) at 17 (emphases added). Thus, pursuant to the SDA, the Seattle Liabilities included all liability to the extent arising out of the operation of the Seattle Business, which includes patent infringement liability to the extent arising out of the operation of the Seattle Business.

11.     Under the SDA, Seattle SpinCo (and/or one or more of its subsidiaries) assumed the "Seattle Liabilities," and HPE assumed the "Excluded Liabilities":

> (ii) <u>Seattle Liabilities</u>. **Seattle and/or one or more of its Subsidiaries designated by Seattle shall accept, assume and agree faithfully to perform, discharge and fulfill the Seattle Liabilities** in accordance with their respective terms. Seattle and such Subsidiaries shall be responsible for all Seattle Liabilities, **regardless of when or where such Seattle Liabilities arose or arise**, or the legal entity that incurred or holds the Seattle Liability (provided, however, that nothing contained herein shall preclude or inhibit Seattle from asserting against third parties any defenses available to the legal entity that incurred or holds such Seattle Liability), or whether the facts on which they are based occurred prior to, at or subsequent to the Distribution Time, regardless of where or against whom such Seattle Liabilities are asserted or determined or whether asserted or determined prior to the date of this Agreement.
>
> \*          \*          \*
>
> (iv) <u>Excluded Liabilities</u>. **Houston and/or its Subsidiaries designated by Houston** (other than Seattle or its Subsidiaries) **shall accept and assume from Seattle or one or more of its Subsidiaries and agree faithfully to perform, discharge and fulfill the Excluded Liabilities** of such other Subsidiaries designated by Houston, and Houston and/or its applicable Subsidiaries shall be responsible for all Excluded Liabilities, regardless of when or where such Excluded Liabilities arose or arise, or the legal entity that

> incurred or holds the Excluded Liability (provided, however, that nothing contained herein shall preclude or inhibit Houston from asserting against third parties any defenses available to the legal entity that incurred or holds such Excluded Liability), or whether the facts on which they are based occurred prior to, at or subsequent to the Distribution Time, regardless of where or against whom such Excluded Liabilities are asserted or determined or whether asserted or determined prior to the date of this Agreement.

*Id.* at 13 (emphases added).

12. Under the SDA, patent infringement liability was not included in the "Excluded Liabilities." In particular, the "Excluded Liabilities" were defined as including the following four sets of liabilities:

> (i) the Liabilities listed or described on Schedule 2.3(b)(i);
>
> (ii) the Liabilities of Houston or its Affiliates to the extent relating to, arising out of or resulting from any Excluded Assets or the Houston Business;
>
> (iii) Liabilities, if any, arising out of or resulting from any amounts that would constitute indebtedness of any member of the Houston Group under GAAP; and
>
> (iv) all other Liabilities that are expressly contemplated by this Agreement or any other Transaction Document as Liabilities to be retained or assumed by Houston or any other member of the Houston Group, and all agreements, obligations and other Liabilities of Houston or any member of the Houston Group under this Agreement or any of the other Transaction Documents.

*Id.* at 19. None of these four categories of liabilities included patent infringement liability arising from the operation of the Seattle Business. Category (i) relates to liabilities arising from specific, non-patent-related litigations. *See* Ex. D (Schedules to the SDA dated as of September 7, 2016) at 42–44. Category (ii) relates to liabilities arising from the "Excluded Assets" and the "Houston Business," neither of which relates to the Seattle Business. Ex. B (Exh. 2.2 (SDA) to 8-K Form of HPE dated Sept. 7, 2016) at 5 (defining the "Houston Business"), 17 (defining the "Excluded Assets"). Category (iii) relates to "any amounts that would constitute indebtedness of any member of the Houston Group." *See id.* at 5 (defining the "Houston Group"). Category (iv)

4

is a catch-all that does not relate to patent infringement liability arising from the operation of what was Seattle Business.

13. Since the completion of the Seattle Transaction, HPE has not had any role in the management or operations of Seattle SpinCo, nor has HPE been involved in the making, importing, selling, or offering to sell the ADM software. Additionally, the Seattle Liabilities assumed by Seattle SpinCo include any liability with respect to allegations of past, present, or future patent infringement arising from the Seattle Business's making, using, selling, offering to sell, and/or importing of the ADM software.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October __17__, 2018.

DocuSigned by:

*Eileen Evans*

C74CAC5DBAA545B...

Eileen Evans

5